**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED

2019 SEP 25  P 4: 5 1

| | |
|---|---|
| **ROOSEVELT LAMAR BRADLEY,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **AUTOZONE STORES LLC** | ) |
| **Defendant.** | ) |

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**CIVIL ACTION NO.**
2:19-cv-716

## COMPLAINT

### I.    INTRODUCTION

Plaintiff, Roosevelt Lamar Bradley (hereinafter, "Plaintiff" or "Mr. Bradley"), files this Title III, Americans with Disabilities Act (hereinafter, "ADA") action against Defendant, AutoZone Stores LLC (hereinafter, "Defendant" or "AutoZone") pursuant to 42 U.S.C. §12181 *et seq*. In Count One of the Complaint, Plaintiff seeks to enjoin Defendant to remove architectural barriers from the facility. In Count Two of the Complaint, Plaintiff seeks to enjoin Defendant to maintain policies, practices, and procedures necessary to maintain the facility free of architectural barriers both now and once the architectural barriers are removed from the facility. In Count Three of the Complaint, Plaintiff seeks to enjoin Defendant's use of the facility to provide full and equal enjoyment of the facility to individuals with disabilities. Count Two of the Complaint and Count Three of the Complaint seek independent relief in addition to the removal of architectural barriers from the facility. In Count Four of the Complaint, Plaintiff seeks to enjoin Defendant's failure to design and construct the facility to ADA compliance.

## II.    JURISDICTION, PARTIES, AND ARTICLE III STANDING

**1.**     This action is for declaratory relief and injunctive relief, pursuant to 42 U.S.C. §12181 *et seq*., Title III of the ADA and implementing regulations; therefore, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

**2.**     Venue is proper in this Court, the United States District Court for the Middle District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Middle District of Alabama.

**3.**     Mr. Bradley's right leg was amputated a few inches above his knee. The extent of Mr. Bradley's physical impairments limits his ability to perform manual tasks, walk, stand, lift, bend, all of which are major life activities pursuant to 42 U.S.C. §12102(2)(A). Therefore, Mr. Bradley is disabled pursuant to the ADA, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. §12102; *see also*, 28 C.F.R. §36.104.

**4.**     Defendant is a limited liability company that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, Defendant owns and operates the real property and improvements located at 6350 Atlanta Highway, Montgomery, Alabama 36117. Defendant's facility is a place of public accommodation pursuant to 42 U.S.C. §12181(7).

**5.**     All events giving rise to this lawsuit occurred in the Middle District of Alabama and Defendant is a citizen thereof.

**6.**     Mr. Bradley is a resident of Prattville, Alabama. Mr. Bradley comes to Montgomery, which is just a few minutes south on I-85, several times a week. Mr. Bradley was born and raised in Montgomery, so he is very familiar with Montgomery and travels there often. Mr. Bradley has family in Montgomery, works in Montgomery, goes to church in Montgomery,

2

shops and eats in Montgomery, and does all the daily activities in Montgomery that come with all his associations with Montgomery. Mr. Bradley intends to continue visiting Defendant's facility. Mr. Bradley will return not only for the goods and the services at Defendant's facility, but also to confirm compliance with the ADA by Defendant. Mr. Bradley will return within the next couple of months; however, he cannot specify the exact date because he has not planned every trip and purchase for the rest of his life. Such specific planning is not necessary to invoke the ADA. *See*, *e.g.*, *Parr v. L&L Drive Inn Restaurant*, 96 F. Supp.2d 1065, 1079 (D. Haw. 2000); *Segal v. Rickey's Restaurant and Lounge, Inc.*, No. 11-61766-cn (S.D. Fla. 2012) ("Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment."). Nevertheless, Mr. Bradley definitely intends to return to Defendant's facility.

7.     Plaintiff has been denied full and equal enjoyment of Defendant's public accommodation on the basis of Plaintiff's disabilities because of the barriers described below in paragraph twenty (20) and throughout the Complaint.

8.     Plaintiff has Article III standing to pursue this action because of the following: (1) Plaintiff is disabled, pursuant to the statutory and regulatory definition, (2) Defendant's facility is a place of public accommodation pursuant to the statutory and regulatory definition, (3) Plaintiff has suffered a concrete and particularized injury by being denied access to the public accommodation, and by Defendant's denial of the use of the public accommodation for Plaintiff's full and equal enjoyment, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph eighteen (18) below.

### III.    PLAINTIFF'S CLAIMS

#### ADA, Title III

**9.**    Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq.* on or about July 26, 1990. Commercial enterprises were provided one and a half years from enactment of the statute to implement the requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508(A); *see also*, §36.304).

**10.**    Pursuant to 42 U.S.C. §12181(7) and 28 C.F.R. §36,104, Defendant's facility is a place of public accommodation in that the facility is a store providing goods and services to the public. Therefore, the public accommodation is covered by the ADA and must comply with the ADA.

### COUNT ONE
### VIOLATION OF THE ADA, TITLE III
### 42 U.S.C. §12182(b)(2)(A)(iv)
### Architectural Barriers

#### Defendant's Existing Facility is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in this Complaint

**11.**    Plaintiff is informed and believes based on publicly available information that the building in which Defendant's facility is located at 6350 Atlanta Highway, Montgomery, Alabama 36117 was first constructed in 1997.

**12.**    Plaintiff is further informed and believes based on publicly available information that the public accommodation in which the facility is located at 6350 Atlanta Highway, Montgomery, Alabama 36117 underwent alterations and/or improvements to the public accommodation after 1997.

**13.**    The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an existing facility, such that those facilities must remove architectural

4

barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All alterations made to existing facilities after January 26, 1992, and all new construction after January 26, 1993, must be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12183(a) - (b). 28 C.F.R. § 36.402. "Readily accessible to and usable by . . ." is the new construction standard, which requires compliance with the Department of Justice (hereinafter, "DOJ") standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the new construction standards is if the design and construction of the building to be readily accessible and usable is structurally impracticable. 42 U.S.C. § 12183(a)(1). The structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. § 36.401(c). "Readily accessible to and usable by . . ." is also the alterations standard. 42 U.S.C. § 12183(a)(2). Alterations must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. § 36.402(b).

    **14.** New construction and alterations must comply with either the DOJ's 1991 Standards for Accessible Design or the 2010 Standards for Accessible Design. 28 C.F.R. § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the

date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable. *See* 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

**15.** For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

### Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

**16.** Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Defendant's facility in derogation of 42 U.S.C. § 12101 *et seq.*, and as prohibited by 42 U.S.C. § 12182 *et seq*. As new construction, the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) - (b). Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

6

**17.**     Prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations, and services offered to individuals without disabilities within and about Defendant's public accommodation. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint, which remain at the public accommodation in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

**18.**     Plaintiff has definite plans to return to the facility in the future, as described in paragraph six (6). Plaintiff will return to the facility within the next couple of months, not only to enjoy the goods and services at the facility, but also to see if Defendant has repaired the architectural barriers and changed the policies, practices, and procedures. Plaintiff will continue to do so even when the facility is repaired. Plaintiff certainly would not want to stop going when the facility is repaired, and the practices are modified. The barriers are not just created by construction issues; instead, many of the barriers are created by human activity, from the way Defendant's workers at the public accommodation use the architectural elements of the public accommodation. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendant's management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein, and as a result, be discriminated against by Defendant on the basis of Plaintiff's disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied ". . . there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when plaintiff returns to the store." Due to the definiteness of Plaintiff's plan

to continue visiting the subject facility, there exists a genuine threat of imminent future injury. Plaintiff's stated intent to return is plausible.

### Architectural Barriers

**19.**     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the DOJ, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

**20.**     Plaintiff has been from the parking lot to the entrance; from the entrance to the toilet room; the toilet room itself; throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to, all of which is more specifically described below. Moreover, Defendant's facility located at 6350 Atlanta Highway, Montgomery, Alabama 36117 violates the ADA in the parking lot, toilet room, checkout counter, and in particular but not limited to:

> **(1)** Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the public accommodation for able-bodied individuals, but fails to provide the same level of access by providing an ADA accessible route from accessible parking spaces to an accessible entrance for non-able-bodied individuals, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation, which includes but is not limited to, the following failures of Defendant:
>
> > **a.** Defendant fails to maintain the parking area and associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals,

which includes but is not limited to, parking spaces failing to be located on the shortest accessible route to the entrance, which has the discriminatory effect of rendering the parking spaces and associated elements as unusable by disabled individuals;

b.  The parking area fails to maintain the required amount of accessible parking spaces, including associated accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the level accessible parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to an accessible entrance of the public accommodation;

c.  The parking area fails to maintain the required amount of accessible parking spaces, including associated accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces adjacent access aisles extend the full length of the parking spaces and are marked so as to discourage parking in the access aisles, which renders the access aisles unusable by the disabled;

d.  The parking area fails to maintain the required amount of accessible parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

e.  The parking area fails to maintain the required amount of accessible parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are

9

identified with accessibility signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**f.** The parking area fails to maintain the required amount of accessible parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking spaces as unusable by the disabled;

**(2)** Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the public accommodation for able-bodied individuals, but fails to provide the same level of access by providing an ADA accessible route from accessible van parking spaces to an accessible entrance for non-able-bodied individuals, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation, which includes but is not limited to, the following failures of Defendant:

**a.** Defendant fails to maintain the parking area and associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, accessible van parking spaces failing to be located on the shortest accessible route to an accessible entrance, which has the

10

discriminatory effect of rendering the parking spaces and associated elements as unusable by disabled individuals;

**b.** The parking area fails to maintain the required amount of accessible van accessible parking spaces, including associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces measure 132 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to an accessible entrance of the public accommodation;

**c.** The parking area fails to maintain the required amount of accessible van parking spaces, including associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisles extend the full length of the parking spaces and are marked so as to discourage parking in the access aisles, which renders the aisles unusable by the disabled;

**d.** The parking area fails to maintain the required amount of accessible van parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

**e.** The parking area fails to maintain the required amount of accessible van parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are

11

identified with accessibility signage, including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**f.** The parking area fails to maintain the required amount of accessible van parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking spaces as unusable by the disabled;

**(3)** The entrance floor mats outside the entrance are not stable, firm, or otherwise secured to the floor;

**(4)** Defendant provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to, the following failures of Defendant:

**a.** When entering and/or exiting the toilet room, there is insufficient maneuvering clear floor space for individuals who require mobility devices to approach the door to push/pull it open and/or maneuver into or out of the toilet room;

**b.** The side wall grab bar fails to be 42 inches long minimum, located 12 inches maximum from the rear wall and extending 54 inches minimum from the rear wall.

12

    **c.** The rear wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finish floor;

    **d.** The toilet paper dispenser fails to be 7 inches minimum and 9 inches maximum in front of the water closet measured to the centerline of the dispenser.

    **e.** The clear floor space around the water closet fails to be maintained in conformance with the ADA Standards for Accessible Design so that the lavatory sink and/or other associated obstructions are not restricting the water closets usability by disabled individuals;

    **f.** The paper towel dispenser exceeds the maximum required height;

    **g.** The sink height exceeds the required maximum height of 34 inches;

    **h.** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

    **i.** The light switch exceeds the maximum required reach range.

**21.** To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

**22.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs,

and expenses paid by Defendant pursuant to 42 U.S.C. §12205.

23.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant
Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily
accessible to, and usable by, individuals with disabilities to the extent required by the ADA, and
closing the facility until the requisite modifications are completed, and to further Order Defendant
to modify the policies, practices, and procedures, to provide equal use of its facilities, services, and
benefits to disabled individuals.

### COUNT TWO
### VIOLATION OF THE ADA, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
### Policies, Practices, and Procedures Denying Equal Benefits

### ADA, Title III Prohibits Other Discrimination in Addition to Architectural Barriers

24.    Plaintiff incorporates paragraphs 1-23 above.

25.    The ADA, Title III, provides a private right of action for "any person who is being
subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. §
12182(a)(1).

26.    The ADA, Title III, specifically makes it unlawful to provide individuals with
disabilities with an unequal benefit, and to relegate individuals with disabilities to a different or
separate benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words,
the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires
that goods, services, and accommodations be provided to individuals with disabilities in "the most
integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the
Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been
forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and

14

mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

27.     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

28.     To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

29.     By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also*, H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need

15

to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

     **30.**    For that reason, the ADA applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.*, 294 F.3d 1279, (11th Cir. 2002) that:

> A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendants entity's goods, services and privileges.

## Defendant's Failed Practices and Lack of Policies Are Discriminatory

     **31.**    Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

**32.** Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

**33.** As detailed below, Defendant has failed to make reasonable modifications in the policies, practices, and procedures that are necessary to afford the goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated, or otherwise treated Plaintiff differently than individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

**34.** Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA, Title III compliance policies, procedures, and practices as to architectural barriers.

**35.** Defendant's use of the facility, and the practices at the facility located at 6350 Atlanta Highway, Montgomery, Alabama 36117, creates barriers and in so doing denies Plaintiff the full and equal enjoyment of the facility. Those practices include:

> **a)** Defendant makes the parking area inaccessible for use by the disabled by failing to provide ADA accessible parking with connecting accessible routes to the

17

establishment from its parking lot, which means that Plaintiff is forced to depend on assistance from a third party to get into the facility, whereas the non-disabled conveniently access the establishment without the need of third party assistance;

**b)** Defendant makes the toilet room inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the toilet room so that Plaintiff is afforded the opportunity to independently use the toilet room, or clean up, or move into and throughout the toilet room, whereas non-disabled individuals are able to independently use the toilet room;

**c)** Defendant fails to provide a place for the disabled to enjoy the goods and services like able-bodied people can;

**d)** Defendant's policies, practices, and procedures are conducted without regard to disabled individuals.

**36.** As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

**37.** As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA, Title III architectural barriers only upon demand by the disabled.

**38.** As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to

create, implement, and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its facility as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Defendant's facility, as described above in detail.

**39.**     As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

**40.**     To date, Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

**41.**     A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all implementing regulations so that architectural barriers identified above are permanently removed from Defendant's facility consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Defendant's facility; (3) Defendant will modify the practice of making ADA, Title III architectural barrier remediations only upon demand by the disabled.

**42.**     As pled above, Defendant owns and operates the real property and improvements in which the public accommodation is located at 6350 Atlanta Highway, Montgomery, Alabama 36117; therefore, pursuant to 42 U.S.C. § 12182, is responsible for creating, implementing, and

maintaining policies, practices and procedures, as alleged above.

**43.**     The ADA is over twenty-five (25) years old. Defendant knows Defendant must comply with the ADA, Title III. The ADA, Title III requires modifications in policies, practices, and procedures to comply with the ADA, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

**44.**     By this Complaint, Plaintiff provides sufficient notice of Plaintiff's demands for an alteration in Defendant's policies, practices, and procedures.

**45.**     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

**46.**     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal policies, practices, and procedures.

**COUNT THREE**
**VIOLATION OF THE ADA, TITLE III**
**Denial of Full and Equal Enjoyment**

**47.**     Plaintiff incorporates paragraphs 1-46 above.

**48.**     42 U.S.C. § 12182(a) provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

**49.**     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination

continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**50.** Congress also found that: "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities, 42 U.S.C. § 12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" 42 U.S.C. § 12101(a)(7). Congress even found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. § 12101(a)(8).

**51.** In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

**52.** The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

**53.** The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

**54.** Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, *et seq*., and the regulations promulgated thereunder.

**55.** To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination*"* including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

**56.** For that reason, the ADA applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

**57.** The keystone for this analysis is Defendant must start by considering how the facility is used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005); *see also, Baughman v. Walt Disney World Company*, 685 F.3d 1131, 1135 (9th Cir. 2012).

**58.** Plaintiff was denied full and equal access to Defendant's public accommodation. Plaintiff specifically and definitely wants to return to Defendant's public accommodation. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals, which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide an accessible parking area and accessible route for disabled individuals, which means Plaintiff cannot park, cannot independently get out of the car and onto Plaintiff's wheelchair, cannot independently travel from the parking area into the public accommodation, cannot determine if there is a usable parking space, and must determine by trial and error how Plaintiff is to park and move into the public accommodation; Defendant failed to provide an accessible route from the parking to the entrance throughout the facility; Defendant failed to provide an accessible toilet room for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the toilet room, clean up after using the

toilet room, move throughout the toilet room, and prohibited from using all the other elements of the toilet room; Defendant's continued failure to maintain ADA accessibility as an integral part of the highest possible experience that non-disabled individuals get to independently enjoy has segregated or otherwise treated Plaintiff and others similarly situated differently, in that, Defendant's public accommodation makes Plaintiff dependent on family or an independent third party, which is not the same experience that Defendant affords to non-disabled individuals and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at Defendant's public accommodation.

**59.** In the Preamble to the Title III regulation, the DOJ recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

**60.** The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status

24

of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

**61.** Thus, Defendant's use of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." *H.R. Rep. No. 101-485(III),* at 50, *1990 U.S.C.C.A.N* at 473. The ADA provides a broad mandate to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675; 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332).

**62.** Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Defendant's public accommodation.

**63.** Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

**64.** Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

**65.**     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

**66.**     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**COUNT FOUR**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. § 12183(a)(1)**

**Failure to design and construct the facility for ADA compliance**

**67.**     Plaintiff incorporates paragraphs 1 – 66 above.

**68.**     42 U.S.C. § 12183(a)(1) provides:

> [Discrimination includes] a failure to design and construct
> facilities for first occupancy later than 30 months after July 26,
> 1990, that are readily accessible to and usable by individuals
> with disabilities, except where an entity can demonstrate that it
> is structurally impracticable to meet the requirements of such
> subsection in accordance with standards set forth or incorporated
> by reference in regulations issued under this subchapter.

**69.**     Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination . . . continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." *Id.* § 12101(a)(5). In its Preamble to the Title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further

26

recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

**70.**    To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities." This very requirement is intended to enable individuals with disabilities "to get to, enter and use a facility." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," *id.*, as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id.*

**71.**    As the legislative history makes clear, the ADA is geared to the future with the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

**72.**    To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design are incorporated into the DOJ's regulations implementing Title III of the ADA, 28 C.F.R. Part 36, Appendix.

**73.**    The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, seating, toilet rooms, and sales/service areas.

**74.**    Defendant operates the real property and improvements in which Defendant's

facility is located and is directly involved in the designing and/or construction of the public accommodation in this litigation for first occupancy after January 1993.

75.     Defendant was and is required to design and construct the public accommodation to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct the store to be readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct the store in compliance with the ADA during planned alterations as described throughout this Complaint.

76.     To date, Defendant's discriminating actions continue.

77.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

78.     Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, Plaintiff demands judgment against Defendant on Counts One through Four and requests the following injunctive and declaratory relief:

1.     That the Court declare that the property and business operated by Defendant as well as all Defendant's illegal actions described herein violate the ADA, as more particularly described above;

2.     That the Court enter an Order enjoining Defendant to alter the facility to make the facility accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv)

and its implementing regulations, as stated in Count One;

3.  That the Court enter an Order, in accordance with Count Two, directing Defendant to modify the policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make the business practices consistent with ADA, Title III in the future;

4.  That the Court enter an Order directing Defendant to provide Plaintiff full and equal access both to the experience and to the use of the public accommodation, and further order Defendant to maintain the required accessible features at the public accommodation so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.  That the Court enter an Order directing Defendant to evaluate and neutralize the policies, practices, and procedures towards individuals with disabilities for such reasonable time so as to allow it to undertake and complete corrective procedures;

6.  That the Court award reasonable attorneys' fees, costs, including expert fees, and other expenses of suit, to Plaintiff;

7.  That the Court enjoin Defendant to remediate the public accommodation to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four; and

8.  That the Court award such other, further, and different relief as the Court deems necessary, just, and proper.

Respectfully Submitted, this the 25th day of September 2019.

*Cassie E. Taylor*
**CASSIE E. TAYLOR**
AL Bar #8297-N67R
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-356-5314
Facsimile: 334-819-4032
Email: CET@ADA-Firm.com
*Attorney for Plaintiff, Mr. Bradley*

**L. LANDIS SEXTON**
AL Bar #5057-N71L
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-819-4030
Facsimile: 334-819-4032
Email: LLS@ADA-Firm.com
*Attorney for Plaintiff, Mr. Bradley*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly

addressed this 25th day of September 2019 to the following:

**AutoZone Stores LLC**
c/o CT Corporation System
Attn.: Registered Agent
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

*Cassie E. Taylor*
**CASSIE E. TAYLOR**
*Attorney for Plaintiff, Mr. Bradley*